WIENER, Circuit Judge,
dissenting:
I respectfully dissent. To me, the factual findings of the district court, albeit they are terse, reflect that Hubbard knowingly and intentionally misused and disregarded his one-man corporation’s form to disadvantage these plaintiffs, with whom he had done business for years. His corporation’s veil should be pierced to expose it as Hubbard’s alter ego and make him personally liable for his corporation’s debts to Plaintiffs-Appellants.
Even when Hubbard’s acts and omissions are viewed in the context of the legal hurdles erected by the applicable law of Texas, he emerges as anything but an innocent, unsophisticated tire dealer. He fraudulently stood mute and continued to do “business as usual” with these plaintiffs *147 despite his certain knowledge of a key fact that he was duty bound to disclose, viz., that unbeknownst to his vendors, the letter of credit partially securing his corporation’s obligations to them had been canceled. Knowing full well that these plaintiffs were unaware that the security for these transactions had ceased to exist and that they would not sell merchandise to him in its absence, Hubbard not only continued to make unsecured purchases of tires, but proceeded to orchestrate duplicitous non-arms-length transfers of that merchandise from his wholly owned and operated corporation to entities owned and controlled by none other than his own sons. He deliberately put this merchandise and its sales proceeds beyond the reach of his uninformed, arms-length creditors and simultaneously made them available instead to his corporation’s lending bank, a secured creditor to which — not so coincidentally — Hubbard was personally liable as guarantor. He obviously benefited personally from these intra-family machinations, not just from rent received and Sub-S corporation advantages realized, but from substantial reduction or elimination of his personal liability to his bank as well.
Like the district court, the panel majority errs by viewing each discrete fact as a snapshot — “in a vacuum” — rather than as a series of links in a continuous and evolving chain of ongoing business transactions between the parties. Far too much is made of the unrelated fact that the letter of credit happened to get canceled through the inadvertence of the plaintiffs’ bank; far too much emphasis is placed on meaningless statistics of in-and-out sales and payments; far too little weight is given to the financial advantages that Hubbard realized personally through the totality of his manipulation of “his” corporation; totally ignored is the concept of attribution, the ascribing of the acts of one party to another closely related party; entirely unrecognized is the commercial fact that the letter of credit was not meant to serve as full collateral but as a safety net to hold the vendors’ potential losses to a manageable risk level; unrealistic is the treatment of the arms-length transactions between these litigants as indistinguishable from the non-arms-length transactions among family members.
Except for Hubbard’s wide-eyed, self-serving testimony that he intended no fraud, all objective evidence demonstrates, to my satisfaction at least, that this is the very kind of case that cries out for the piercing of the corporate veil to hold its sole shareholder personally liable to those he duped by interposing his corporate alter ego and remaining silent in the face of his duty to inform. If nothing else, we today re-affirm the age-old adage that “debtors either die or move to Texas.” Despite my sincerely genuine respect for the district court and my learned colleagues of the panel majority, I am constrained to dissent.